**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KATRINA GODBEY,<br>Plaintiff,<br><br>v.<br><br>CITY OF BETHLEHEM, *et al.*<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>: | Civil No.: 5:25-cv-04619-JMG |

**MEMORANDUM OPINION**

**GALLAGHER, J.** **August 7, 2026**

## I. OVERVIEW

Plaintiff Katrina Godbey brings this civil rights action under 42 U.S.C. § 1983 against Defendants Officers Duncan Cahalan, Eric Hammer, and Timothy Hogg ("Officer Defendants"), and the City of Bethlehem ("City"). Plaintiff alleges that Officer Defendants used excessive force when they forced their way into her home and, in turn, slammed her into her wooden staircase. She also asserts that the City did not adequately train or supervise its officers on how to handle interactions with non-criminal members of the public. Officer Defendants and the City (collectively, "Defendants") moved for summary judgment on all of Plaintiff's claims and their qualified immunity defense. For the following reasons, Defendants' motion is **DENIED**.

## II. BACKGROUND

Plaintiff and Defendants (collectively, the "Parties") largely agree as to the facts in this case. On or about March 1, 2024, an anonymous individual reported hearing pounding at Plaintiff's residence and a female screaming "get off of me." *See* Concise Statement of Material Facts in Supp. of Defs.' Mot. for Summ. J. ("Defs.' SMF"), ¶¶ 6, 18 (ECF No. 27); Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts ("Resp. to Defs.' SMF"), ¶¶ 6, 18 (ECF No. 29-3). When

Officer Defendants responded to Plaintiff's residence, Officer Cahalan told the other officers that the male who lived there had a history of paranoia and schizophrenia. *See* Defs.' SMF ¶ 7; Resp. to Defs.' SMF ¶ 7. Officer Defendants were also aware that Plaintiff's residence had a history of domestic calls to the police. *See* Defs.' SMF ¶ 24; Resp. to Defs.' SMF ¶ 24.

When Plaintiff finally answered the door, Officer Hogg advised they needed to check on the welfare of the occupants due to an alleged domestic disturbance. *See* Defs.' SMF ¶ 9; Resp. to Defs.' SMF ¶ 9. Plaintiff insisted that she was home alone and denied a domestic disturbance. *See* Defs.' SMF ¶ 10; Resp. to Defs.' SMF ¶ 10. Plaintiff specifically stated that her husband, Scott Godbey, was not permitted to be there. *See* Defs.' SMF ¶ 11; Resp. to Defs.' SMF ¶ 11. As Plaintiff spoke with the Officer Defendants, she opened the door wider, revealing that she was alone in her living room and that there was a wooden staircase directly behind her. *See* Defs.' Mot. for Summ. J., Ex. B ("Defs.' Ex. B"), at 2:55-59, 3:45-50; Defs.' Mot. for Summ. J., Ex. C ("Defs.' Ex. C"), at 2:46-50, 3:26-30, 4:14-18. After a couple of minutes of refusing entry, Plaintiff attempted to close the door on the Officer Defendants. *See* Defs.' SMF ¶¶ 13-14; Resp. to Defs.' SMF ¶¶ 13-14. Officer Cahalan placed his foot against the door, and Officer Hogg and Officer Cahalan pushed the door open. *See* Defs.' SMF ¶¶ 14-15; Resp. to Defs.' SMF ¶¶ 14-15. Forcing the door open with Plaintiff immediately behind it caused her to fall backwards into her wooden staircase. Defs.' Ex. B, 3:53-59. Officer Defendants entered the home and found her husband, Scott Godbey, hiding in the kitchen. *See* Defs.' SMF ¶ 16; Resp. to Defs.' SMF ¶ 16. He was arrested and charged with simple assault and harassment. *See* Defs.' SMF ¶ 17; Resp. to Defs.' SMF ¶ 17.

After Officer Defendants arrested Mr. Godbey, Plaintiff told them that Mr. Godbey struck her with a closed fist to the left side of her face, grabbed her neck, forced her against a wall as he punched her, and then brought her to the ground where he continued to punch her. *See* Defs.' SMF

¶ 21; Resp. to Defs.' SMF ¶ 21. She did not open the door because she was afraid of Mr. Godbey and the repercussions for Officer Defendants' presence. *See* Defs.' SMF ¶ 22; Resp. to Defs.' SMF ¶ 22. Plaintiff declined any medical evaluation but claimed that she injured her right forearm and elbow from the door and fall into the staircase. *See* Defs.' SMF ¶ 19; Resp. to Defs.' SMF ¶ 19.

Plaintiff brought this Section 1983 lawsuit against Defendants. *See* 1st Am. Compl., at 4-7 (ECF No. 18). Discovery is now closed, and Defendants move for summary judgment on all Plaintiff's claims and their affirmative defense of qualified immunity. *See generally* Br. in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Br. in Supp.") (ECF No. 26-2).

## III. LEGAL STANDARD

Federal Rule of Civil Procedure Rule 56(c) provides that the district court must "grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Essentially, the Court must analyze "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. A genuine issue of fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). At this stage of litigation, all facts presented are viewed in the light most favorable to the nonmoving party. *Daniels v. City of Pittsburgh*, No. 22-1790, 2023 WL 2707178, at *2 (3d Cir. Mar. 30, 2023).

To survive a properly supported motion for summary judgment, the nonmoving party, Plaintiff in this case, must present affirmative evidence of specific facts to demonstrate a genuine issue of material fact. *Anderson*, 477 U.S at 256-57; *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d

195, 201 (3d Cir. 2006) (citing *Pa. Prot. & Advoc., Inc. v. Pa. Dep't of Pub. Welfare,* 402 F.3d 374, 379 (3d Cir.2005)) ("Although the non-moving party receives the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact."). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Colkitt*, 455 F.3d at 201; FED. R. CIV. P. 56(c)(1)(A) (requiring any party asserting a fact to "cit[e] to particular parts of materials in the record"). Statements of Disputed Facts are not evidence, so a "district court may not rely solely on" them to justify a finding that a dispute of material fact exists. *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006), *as amended* (May 5, 2006) (internal citation omitted).

Ordinarily, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Washington v. Ondrejka*, 822 F. App'x 104, 106 (3d Cir. 2020) (per curiam) (quoting *Anderson*, 477 U.S. at 255). But the Court need not accept the nonmovant's version of the facts where a video recording of the incident "blatantly contradicts the non-movant's version so that no reasonable jury could believe it." *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (affirming summary judgment where videotape of defendants extracting plaintiff from his cell refuted plaintiff's claim that "defendants' use of force was applied 'maliciously and sadistically to cause harm'").

**IV. ANALYSIS**

"Section 1983 provides a civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Halsey v. Pfeiffer*, 750 F.3d 273, 290 (3d Cir.

2014) (quoting 42 U.S.C. § 1983). Here, Plaintiff claims that Officer Defendants used excessive force, and the City did not adequately train its officers. Because the merits determination of Plaintiff's excessive force claim under Section 1983 overlaps with the first prong of the qualified immunity analysis, the Court will address both the merits and the qualified immunity defense at once. *See Smith v. McKinney*, No. 2:22-CV-02983-JDW, 2023 WL 6543531, at *4 (E.D. Pa. Oct. 6, 2023).

**A. Claim Against Officer Defendants**

"Police officers, embodying the authority of the state, are liable under § 1983 when they violate someone's constitutional rights, unless they are protected by qualified immunity." *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021) (quoting *Santini v. Fuentes*, 795 F.3d 410, 416-17 (3d Cir. 2015)). As the moving party, Officer Defendants have the burden of establishing qualified immunity. *Klein v. Madison*, 374 F. Supp. 3d 389, 407 (E.D. Pa. 2019) (quoting *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011)).

The Court conducts a two-prong inquiry to determine whether a police officer is entitled to qualified immunity. First, the Court considers whether the officer's conduct violated a constitutional right, viewing the facts in the light most favorable to Plaintiff. *See Peroza-Benitez*, 994 F.3d at 165. Second, the Court considers "whether the right was clearly established, such that it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *See id.* (citation modified). The Court has discretion to decide which prong to address first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Peroza-Benitez*, 994 F.3d at 165. Under either prong, the Court "may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam).

**1. Prong One: Constitutional Inquiry**

Plaintiff claims that Officer Defendants used excessive force against her when she was thrown backwards from Officer Defendants pushing open her door, in violation of her Fourth Amendment right against unreasonable seizures. *Id.* (explaining the Fourth Amendment right against unreasonable seizures is the right at issue when "plaintiff alleges excessive force during an investigation or arrest"); *see also Jefferson v. Lias*, 21 F.4th 74, 78 (3d Cir. 2021) ("Claims of excessive force against law enforcement officers brought by persons outside of police custody are analyzed under the Fourth Amendment."). Accordingly, the Court must consider whether the "use of force was reasonable under the circumstances," which requires carefully balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Lias*, 21 F.4th at 78; *see also Tolan*, 572 U.S. at 656 (same). The reasonableness of an officer's force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *See Lias*, 21 F.4th at 78).

Additionally, the Court should consider "the physical injury to the plaintiff, the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Id.* at 79 (quoting *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020)). "Because the inquiry is so fact-dependent, we have held that the reasonableness of the use of force

is normally an issue for the jury." *Id.* (citation modified) (quoting *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004)).

Defendants argue that they are entitled to summary judgment on Plaintiff's excessive force claim because they used the amount of force necessary to enter the home and ensure everyone was safe. *See* Defs.' Br. in Supp., at 10. Additionally, they point to several cases where the amount of force was greater than that used against Plaintiff, yet summary judgment was granted. *See* Defs.' Br. in Supp., at 10-12. Plaintiff counters that there was no immediate danger, and she posed no threat to the officers. *See* Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n Br."), at 7-9 (ECF No. 29). She also distinguishes the cases cited by Defendants by observing out that the plaintiffs in those cases were not victims—they were suspects—and refers the Court to *Grenci v. Ocean Cnty.*, No. CIV.A.04-5806 MLC, 2006 WL 2376914, at *7 (D.N.J. Aug. 15, 2006), where the Court denied summary judgment under similar circumstances. *See id.* at 9-10.

As to the necessity of entering Plaintiff's home, Defendants are not entitled to the inference that exigent circumstances existed and could enter the home without a warrant. *See Ciaccio v. Upper Saucon Twp.*, No. 5:23-CV-02863-JDW, 2025 WL 1268689, at *5 (E.D. Pa. May 1, 2025), *appeal dismissed sub nom. Ciaccio v. Twp. of Upper Saucon*, No. 25-1978, 2025 WL 3458878 (3d Cir. Oct. 3, 2025) ("It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." (citation modified)). If Defendants are going to imply that exigent circumstances permitted them to enter, then they bear the burden of overcoming that presumption. At this stage, they have not done so. Viewing the facts revealed in the body-worn camera footage in Plaintiff's favor, there were no signs of disturbance when Officer Defendants arrived at Plaintiff's house. *See* Pl.'s Statement of Additional Facts ¶ 29 (ECF No. 29-3); Defs.' Reply to Pl.'s Statement of Additional Facts ¶ 29 (ECF No. 30). Plaintiff

told Officer Defendants that she was alone. *See* Defs.' SMF ¶¶ 10-11; Resp. to Defs.' SMF ¶¶ 10-11. As Plaintiff and Officer Defendants spoke, she also opened the door wider, revealing her full body, the vacant living room, and the wooden staircase behind her. *See* Defs.' Ex. B, at 2:55-59, 3:45-50; Defs.' Ex. C, at 2:46-50, 3:26-30, 4:14-18. As far as Officer Defendants could see, she was alone. And because they were responding to a domestic disturbance where the woman was the victim, and Officer Defendants knew the other occupant was a man, it is reasonable to infer that Officer Defendants knew that the female occupant—Plaintiff—was the alleged victim and not dangerous.

Nor are Defendants entitled to the inference that imminent injury allowed them to enter. While the need to provide immediate aid is a recognized exception to the presumption against warrantless searches and seizures, Officer Defendants must establish that they had "an objectively reasonable basis for believing" that someone in the house needed immediate aid. *Ciaccio*, 2025 WL 1268689, at *5 (quoting *Michigan v. Fisher*, 558 U.S. 45, 47 (2009)). Again, the Court cannot come to that conclusion on summary judgment. Officer Defendants responded to Plaintiff's home when an anonymous caller advised that they heard pounding at Plaintiff's residence and a female screaming "get off of me." Defs.' SMF ¶¶ 6, 18; Resp. to Defs.' SMF ¶¶ 6, 18. Plaintiff was the one who would need imminent aid, and she stated she did not. Moreover, when Plaintiff opened the door wider, she revealed that she did not have obvious injuries. *See* Defs.' Ex. B, at 2:55-59, 3:45-50; Defs.' Ex. C, at 2:46-50, 3:26-30, 4:14-18. Officer Defendants asked her about a potential injury to her hand, but she dismissed that as dry skin. *See* Defs.' SMF ¶¶ 10-11; Resp. to Defs.' SMF ¶¶ 10-11; Defs.' Ex. B, at 3:08-17. Because no one asked her about her other injuries until Officer Defendants were inside of her home, the Court can infer that Officer Defendants did not see that she was injured before they entered.

Defendants also contend that Plaintiff created an immediate threat to Officer Defendants by closing the door when Officer Defendants were conducting a welfare check on all the occupants. But again, viewing the facts in Plaintiff's favor, she was the victim whose welfare needed checking, and she conveyed to Officer Defendants that she was unharmed.

After a couple minutes of speaking with Officer Defendants at her front door, Plaintiff told Officer Defendants to get a search warrant if they wanted to enter her home and began to close the door. *See* Ex. B, 3:52-59. Without overcoming the presumption against warrantless searches and seizures, Officer Cahalan put his foot in the door to prevent Plaintiff from closing it, and he and Officer Hogg forced the door open. *See* Defs.' SMF ¶¶ 14-15; Resp. to Defs.' SMF ¶¶ 14-15. And in doing so, Officer Defendants knocked Plaintiff backwards into the hard, wooden staircase behind her when they knew she was immediately behind the door and the staircase was no more than a step or two behind her. Defs.' Ex. B, 3:53-59. Though Defendants insinuate that their entry was permissible and the force was "a mere push to gain entry," *see* Defs.' Br. in Supp., at 11, a jury could disagree with that framing. *See Ciaccio*, 2025 WL 1268689, at *5-6 (finding police officers had no right to enter plaintiff's home where, despite a text stating she "shot herself," officers subsequently spoke with her, observed she "didn't sound shot," faced no safety threat, and had no indication anyone inside needed emergency aid).

**2. Prong Two: Clearly Established Right Inquiry**

"Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right" at the time of the violation. *See Pearson*, 555 U.S. at 232; *Bradley v. W. Chester Univ. of Pa. State Sys. of Higher Educ.*, 226 F. Supp. 3d 435, 440-41 (E.D. Pa. 2017), *aff'd but criticized on other grounds,* 880 F.3d 643 (3d Cir. 2018) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *Elder v. Holloway*, 510 U.S. 510, 514 (1994) ("A plaintiff who seeks damages

for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by ***showing*** that those rights were clearly established at the time of the conduct at issue." (emphasis in original)). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (citation modified).

The Court must conduct a two-part inquiry to determine whether a right was clearly established. *See Peroza-Benitez*, 994 F.3d at 165. First, the Court must "define the right allegedly violated at the appropriate level of specificity" by "fram[ing] the right 'in light of the specific context of the case, not as a broad general proposition.'" *See id.* (citations omitted); *see also Mullenix*, 577 U.S. at 12 (explaining the right cannot be defined "at a high level of generality"); *White v. Pauly*, 580 U.S. 73, 79 (2017) ("[T]he clearly established law must be "particularized" to the facts of the case."). "Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix*, 577 U.S. at 12 (citation modified).

Second, the Court "must ask whether that right was 'clearly established' at the time of its alleged violation, *i.e.*, whether the right was 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *See Peroza-Benitez*, 994 F.3d at 165. (citations omitted). This is an "objective (albeit fact-specific) question, where an officer's subjective beliefs are irrelevant." *See id.* (citation modified) (citations omitted). The Third Circuit "takes a 'broad view of what constitutes an established right of which a reasonable person would have known.'" *Id.* at 165-66 (acknowledging it first considers factually analogous Supreme Court and binding Third Circuit cases, followed by "whether there is a 'robust consensus of cases of

persuasive authority in the Courts of Appeals,'" and then district court cases within this Circuit and elsewhere). Accordingly, "a right may be clearly established even without a precise factual correspondence between the case at issue and a previous case." *Id.* at 166 (citation modified).

Here, there are two related rights at issue: the right to be free from warrantless entry into one's home, absent consent or exigent circumstances, and the right, as an unarmed victim, to be free from the use of physical force by officers.[1] It has been long established that "[a]bsent consent or exigent circumstances, a private home may not be entered to conduct a search or effect an arrest without a warrant." *Donovan v. Dewey*, 452 U.S. 594, 599 n.6 (1981). And in this Circuit, it has been established for more than a decade that "an unarmed individual who is not suspected of a serious crime—including one who is verbally uncooperative or passively resists the police—has the right not to be subjected to physical force such as being grabbed, dragged, or taken down." *Gross v. Cairo*, No. 22-2920, 2023 WL 8646265, at *3 (3d Cir. Dec. 14, 2023) (quoting *El*, 975 F.3d at 340) (holding officer violated plaintiff's clearly established right to be free from sudden and violent physical force where plaintiff pled that officer punched plaintiff in the stomach when she was unarmed and not suspected of any crime). Accordingly, these rights were clearly established in March 2024, and Officer Defendants are not entitled to qualified immunity.

**B. Claim Against City**

Plaintiff's Section 1983 against the City is on the basis of municipal liability, as the Supreme Court recognized in *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658 (1978). To prevail, Plaintiff "must show both that [her] rights were violated and that the city is

---

[1] Plaintiff argues the right at issue is simply the right not to be subjected to excessive force. *See* Pl.'s Opp'n Br., at 11. That is far too broad. *See City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42-43 (2019) (per curiam) ("It does not suffice for a court simply to state that an officer may not use unreasonable and excessive force . . . .").

liable for that violation." *Hightower v. City of Phila.*, 130 F.4th 352, 355 (3d Cir. 2025). But the City cannot be held vicariously liable for Officer Defendants' actions. *See id.* The City must instead be the "moving force" behind the constitutional violation *See id.* at 356. That requires Plaintiff to show that City "(1) had an unconstitutional policy or custom or (2) was deliberately indifferent to [her] rights." *See id.* at 356.

Defendants raise two arguments as to the *Monell* claim. First, Defendants assert that "Plaintiff has failed to establish an underlying constitutional violation." Defs.' Br. in Supp., at 16. As addressed above, Defendants are not entitled to summary judgment on this issue. Second, Defendants contend that "Plaintiff has failed to provide any evidence of a[] constitutionally deficient custom, policy, or practice." Defs.' Br. in Supp., at 16. But on summary judgment, it is ***Defendants'*** burden to establish the ***absence*** of evidence. *See Rabuffo v. VCA, Inc.*, 222 F. Supp. 3d 406, 413 (E.D. Pa. 2016). That can be done in several ways, such as "reviewing for the court the admissions, interrogatories and other exchanges between the parties that are in the record." *See id.* (quoting *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 84 n.2 (3d Cir. 1987))). Defendants have not met their burden.

Nonetheless, the Court may "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." *See* FED. R. CIV. P. 56(f)(3). In responding to Defendants' Motion, Plaintiff did not point to the record and instead relied on the Amended Complaint. *See* Pl.'s Br. in Opp'n, at 12-13. Considering that Plaintiff exclusively relied upon her Amended Complaint to oppose Defendants' motion, the Court believes that there is no genuine dispute of material fact as to the *Monell* claim. *See Colkitt*, 455 F.3d at 201 ("[T]he non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."). Plaintiff shall have seven more days

to point to the summary judgment record and demonstrate to the Court that there is a genuine dispute of material fact with respect to her *Monell* claim. *See* FED. R. CIV. P. 56(f).

## V. CONCLUSION

The Court finds that a reasonable fact finder could reach a judgment for the Plaintiff on her excessive force claim against Officer Defendants. However, the Court is skeptical that Plaintiff's *Monell* claim can proceed to trial. Accordingly, the Court **DENIES** Defendants' Motion for Summary in its entirety but **ORDERS** Plaintiff to show why the Court should not grant summary judgment on the *Monell* claim for Defendants.

An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge